# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BANK OF NEW YORK, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-84 Mortgage Pass-Through Certificates, Series 2005-84,

    Plaintiff

v.

SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION and SFR INVESTMENTS POOL 1, LLC,

    Defendants

Case No.: 2:17-cv-02699-APG-BNW

**Order (1) Granting in Part SFR's Motion to Dismiss; (2) Granting in Part Southern Highlands' Motion for Summary Judgment; and (3) Requiring Plaintiff to Show Cause Why Alessi & Koenig, LLC Should Not Be Dismissed**

[ECF Nos. 65, 68]

    Plaintiff Bank of New York (BONY) sues to determine whether a non-judicial foreclosure sale conducted by defendant Southern Highlands Community Association (Southern Highlands) extinguished BONY's deed of trust that encumbered property located at 10995 Calcedonian Street in Las Vegas, Nevada. Defendant SFR Investments Pool 1, LLC (SFR) purchased the property at the homeowners association (HOA) foreclosure sale.

    In its first amended complaint, BONY sued for declarations that its deed of trust remains as an encumbrance against the property and that it may enforce the deed of trust through either a judicial or non-judicial foreclosure sale. ECF No. 17. BONY also sued Southern Highlands for equitable indemnification and wrongful foreclosure in the event that BONY's deed of trust was extinguished by the HOA sale. *Id.*

    I granted SFR and Southern Highlands' motions to dismiss, ruling that BONY's declaratory relief and wrongful foreclosure claims were untimely. ECF No. 61. However, I granted BONY leave to amend to allege facts that may support equitable tolling of the

limitations period. *Id.* I also ruled that BONY's equitable indemnification claim was timely but suggested that BONY consider whether equitable indemnity was a viable claim in the context of this case. *Id.*

BONY filed a second amended complaint in which it reasserts its claim for declaratory relief regarding the deed of trust's validity. ECF No. 63 at 13-15. BONY also repleads its wrongful foreclosure claim, but asserts it only against Southern Highlands' foreclosure agent, Alessi & Koenig, LLC (Alessi). *Id.* at 16-17. BONY dropped its equitable indemnification claim and added a claim for breach of the Covenants, Conditions, and Restrictions (CC&Rs) against Southern Highlands. *Id.* at 15-16.

SFR moves to dismiss and Southern Highlands moves for summary judgment, both arguing the declaratory relief and wrongful foreclosure claims are untimely.[1] They also both argue that my prior order did not grant BONY leave to add the new claim for breach of the CC&Rs. Alternatively, Southern Highlands contends the new claim lacks merit.

BONY responds that it has adequately alleged a factual basis for equitable tolling for the declaratory relief claim. BONY asserts that SFR and Southern Highlands have no standing to challenge the timeliness of the wrongful foreclosure claim because that claim is asserted only against Alessi. Finally, BONY contends it properly added a claim for breach of the CC&Rs and that genuine issues of fact remain regarding whether Southern Highlands breached the CC&Rs.

The parties are familiar with the facts, and I will not repeat them here except where necessary to resolve the motions. I grant SFR and Southern Highlands' motions as to the declaratory relief claim because BONY has not plausibly alleged a basis for equitable tolling.

---

[1] Southern Highlands also contends the declaratory relief claim should be dismissed because it is not a standalone cause of action. I have previously rejected a similar argument that Southern Highland raised citing the same cases. *See* ECF Nos. 24 at 6; 61 at 8 n.3; 65 at 6.

Additionally, I grant Southern Highlands' motion as to the newly added claim for breach of the CC&Rs because I did not grant leave for BONY to add a new claim, the time to amend the pleadings has passed, and BONY has not shown good cause to amend the scheduling order to allow late amendment to add a claim it has known or should have known about since the inception of this case.

I deny SFR and Southern Highlands' motions to the extent they are directed at the wrongful foreclosure claim because that claim is asserted only against Alessi. However, the second amended complaint does not name Alessi as a defendant in the caption or in the section where it lists the parties to the action. Although BONY asserts that Alessi has failed to appear and defend this action, a summons has never been issued to Alessi, nor is there proof of timely service on Alessi even though the second amended complaint was filed over a year ago. I therefore order BONY to show cause why I should not dismiss Alessi from this case.

## II. ANALYSIS

SFR moves to dismiss and Southern Highlands moves for summary judgment. I will review the second amended complaint under the motion to dismiss standard, but under either standard, the result would be the same because the parties do not dispute the facts with respect to equitable tolling and amendment. Rather, they dispute the legal significance of those facts.

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible

entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

**A. Declaratory Relief**

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (alteration and quotation omitted). A limitation period begins to run "from the day the cause of action accrued." *Clark v. Robison*, 944 P.2d 788, 789 (Nev. 1997). A cause of action generally accrues "when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990); *see also State ex rel. Dep't of Transp. v. Pub. Emps.' Ret. Sys. of Nev.*, 83 P.3d 815, 817 (Nev. 2004) (en banc) ("A cause of action 'accrues' when a suit may be maintained thereon." (quotation omitted)). Nevada has adopted the discovery rule, and thus time limits generally "do not commence and the cause of action does not 'accrue' until the aggrieved party knew, or reasonably should have known, of the facts giving rise to the damage or injury." *G & H Assocs. v. Ernest W. Hahn, Inc.*, 934 P.2d 229, 233 (Nev. 1997).

The HOA foreclosure sale took place on September 19, 2012, the trustee's deed upon sale was recorded on October 9, 2012, and BONY filed the original complaint in this matter on October 20, 2017. ECF Nos. 1 at 1; 63 at 10. As I stated in my prior order, the four-year catchall limitation period in Nevada Revised Statutes § 11.220 applies to BONY's claim for a declaration that the deed of trust was not extinguished, so the claim is untimely. I nevertheless gave BONY

4

leave to amend to allege facts supporting equitable tolling. The parties dispute whether BONY has adequately done so in its second amended complaint.

"Equitable tolling operates to suspend the running of a statute of limitations when the only bar to a timely filed claim is a procedural technicality." *State Dep't of Taxation v. Masco Builder Cabinet Grp.*, 265 P.3d 666, 671 (Nev. 2011). Equitable tolling "is appropriate only when the danger of prejudice to the defendant is absent and the interests of justice so require." *Id.* (quotation omitted). The inquiry "focuses on whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *City of N. Las Vegas v. State Local Gov't Employee-Mgmt. Relations Bd.*, 261 P.3d 1071, 1077 (Nev. 2011) (en banc) (quotation omitted). Nonexclusive factors to consider when determining whether it would be just to employ equitable tolling include: "the [plaintiff]'s diligence, knowledge of the relevant facts, reliance on misleading authoritative agency statements and/or misleading . . . conduct [by the defendant], and any prejudice to the [the defendant]." *Id.*

### 1. Diligence/Knowledge of Relevant Facts

BONY argues that it was diligent because its predecessor started to foreclose in November 2008 but the borrower filed for bankruptcy so it could not complete the process. BONY contends that Southern Highlands and Alessi then misled BONY as to whether a superpriority lien was being foreclosed because the notices did not identify the superpriority amount, Alessi did not respond to the letter asking about the superpriority amount, and Alessi took the position in an NRED arbitration in another case that an HOA's superpriority lien was not triggered until the deed of trust was foreclosed. BONY notes that its servicer offered to pay

5

the superpriority amount but Alessi did not respond. BONY contends it was diligent because it moved forward with its own foreclosure shortly after the HOA sale but SFR filed suit to stop that foreclosure and that case remained pending for two years before SFR voluntarily dismissed it. BONY argues it then brought this lawsuit "only a few years thereafter." ECF No. 78 at 11.

The defendants argue that BONY has not alleged facts showing diligence because although the foreclosure process started in November 2008, BONY or its predecessor then did nothing for over a year even though the HOA was conducting its own foreclosure process. They contend that the bankruptcy is irrelevant because the HOA sale took place after the stay was lifted, so the automatic bankruptcy stay could not bear on equitable tolling. According to the defendants, the fact that BONY's servicer offered to pay the superpriority lien shows BONY knew its deed of trust was in jeopardy before the HOA sale yet it took no action to stop the sale. As for the state court litigation, the defendants argue that BONY did not assert its own claims in that case. Finally, the defendants note that despite the Supreme Court of Nevada's decision in *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408 (Nev. 2014) (en banc) putting BONY on notice that its deed of trust was in jeopardy, BONY waited several more years to file this case.

BONY has not alleged facts plausibly showing diligence given the facts it knew. As an initial matter, BONY's allegations regarding the 2008 foreclosure notice and the bankruptcy proceeding are irrelevant to the question of whether BONY acted diligently within the limitation period.[2] The question is not whether BONY was diligent in foreclosing on the deed of trust. The

---

[2] Even if I considered the time period before the HOA sale, that evidence does not particularly help BONY show diligence. According to the second amended complaint, BONY's predecessor recorded a notice of default on November 21, 2008. ECF No. 63 at 5. The borrower did not file for bankruptcy until February 2010. *Id.* at 5. The second amended complaint contains no factual allegations as to why the foreclosure process did not proceed for more than a year after the notice of default was recorded, even though during that time, the HOA was proceeding with its own

6

question is whether BONY was diligent in discovering and asserting its declaratory relief claim against SFR and Southern Highlands.

As for the alleged assurances by Alessi, the brief BONY attaches to its opposition does not support its allegation that prior to the sale, Alessi had assured lenders that the superpriority lien was not triggered until the deed of trust holder foreclosed or that HOA sales would not extinguish deeds of trust. *See* ECF No. 79-1 at 176-89.[3] To the contrary, Alessi stated that the HOA lien had priority over the deed of trust. *Id.* at 179. And while the NRED arbitrator did conclude that the superpriority lien was not triggered until the lender foreclosed, that was a non-binding decision that was soon contradicted by an opinion that NRED issued in December 2012. ECF No. 79-1 at 191-98; NRED Advisory Opinion 13-01 at 9 ("An association can foreclose its super priority lien and the first security interest holder will either pay the super priority lien amount or lose its security."). Indeed, BONY acknowledges that NRED's December 12, 2012 opinion put BONY on notice that its deed of trust may be at risk. ECF No. 78 at 8.

Moreover, BONY's own allegations show it knew prior to the HOA sale that its deed of trust was in jeopardy. A week before the HOA sale, Bank of America sent a letter to Alessi requesting the superpriority amount. ECF No. 63 at 8. In that letter, Bank of America's agent acknowledged that the HOA lien "is prior to a first security interest to the extent of the assessments for common expenses which would have become due during the 9 months before

---

foreclosure. *See id.* at 6-7. Because the HOA sale took place after the bankruptcy proceedings concluded, the automatic stay does not support tolling the limitation period.

[3] I may consider the Bank of America letter, Alessi's brief from the arbitration, and the NRED arbitrator's decision without converting SFR's motion to dismiss into one for summary judgment. BONY's second amended complaint relies on these documents to allege equitable tolling and tender, and BONY does not contest their authenticity. ECF Nos. 63; 79-1; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Additionally, I may take judicial notice of NRED's advisory opinion. *Id.* at 688-89.

7

institution of an action to enforce the lien." ECF No. 79-1 at 149.  The letter conceded that based on this statutory language, "a portion of your HOA lien is arguably senior to [Bank of America's] first deed of trust . . . ." *Id.*  Alessi did not respond to this letter and the foreclosure sale took place on September 19, 2012. ECF No. 63 at 8, 10.  Rather than showing diligence or lack of knowledge, this evidence suggests both that BONY and its servicer were aware that the deed of trust was at risk and that BONY was not diligent in timely filing a declaratory relief claim.

BONY alleges that about two months after the HOA sale, its foreclosure trustee recorded a foreclosure notice. ECF No. 63 at 12.  In response, SFR filed suit in Nevada state court in January 2013 to stop the non-judicial foreclosure. *Id.*  Neither BONY nor its servicer filed a counterclaim seeking a declaration that the HOA foreclosure sale did not extinguish the deed of trust.  The trial court dismissed SFR's complaint.  When that decision was reversed on appeal following the *SFR* decision, the state court action was dismissed at SFR's request in July 2015. *Id.*

BONY argues it had no reason to file its own declaratory relief claim while SFR's claim was pending, but the Supreme Court of Nevada has repeatedly rejected the idea that the limitations period should be tolled while the parties were litigating the same issues in a separate action. *See Nevada State Bank v. Jamison Family P'ship*, 801 P.2d 1377, 1382 (Nev. 1990) ("affirm[ing] the district court's ruling that a plaintiff, by instituting an action before the expiration of a statute of limitation, does not toll the running of that statute against compulsory counterclaims filed by the defendant after the statute has expired"); *Siragusa v. Brown*, 971 P.2d 801, 808 n.7 (Nev. 1998) ("[W]e specifically reject appellants' argument that because they were litigating the same issues against Brown in the bankruptcy proceedings as were set forth in the

8

instant complaint, the limitation periods were tolled during the pendency of those bankruptcy proceedings."). BONY does not explain why it did not object to SFR dismissing the case so that it could assert a counterclaim. Nor does BONY explain why it waited more than two years after the state court action was dismissed to file this lawsuit.

In sum, BONY has not alleged facts plausibly showing that it was diligent in light of the facts it knew during the limitation period. Instead, BONY has alleged facts showing that it knew prior to the HOA sale that its deed of trust was at risk; that shortly after the HOA sale, NRED issued an opinion that HOA foreclosure sales extinguish deeds of trust; that it knew as of January 2013 that SFR was taking the position with respect to this property that the deed of trust was extinguished; and that while SFR was staying some cases, it was litigating others, as both the *SFR* decision and the litigation related to this property show. Yet BONY let more than four years pass before it filed this suit. This is not a case where a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period. By BONY's own allegations, it knew everything it needed to know as of the date of the HOA foreclosure sale, and certainly no later than December 2012, but it failed to file suit until October 2017.

### 2. Reliance on Misleading Authoritative Agency Statements

BONY contends it relied on authoritative statements by Alessi and the NRED arbitrator. The defendants argue that neither Alessi nor the NRED arbitrator is an authoritative administrative agency, and even if they were NRED issued its opinion that an HOA sale extinguishes a deed of trust in December 2012, so at least as of that date BONY knew from an authoritative agency statement that its deed of trust was at risk.

As discussed above, the brief BONY relies on does not show that Alessi assured lenders that the superpriority lien was triggered by a foreclosure of the deed of trust or that HOA sales

9

did not extinguish deeds of trust. But even if it did, Alessi is not an administrative agency nor is its legal position authoritative. Likewise, the NRED arbitrator's decision was not authoritative because it was a non-binding decision in a particular arbitration. Finally, NRED issued an opinion in December 2012 in which it concluded that HOA sales would extinguish deeds of trust. BONY thus has not plausibly alleged reliance on an authoritative agency statement to support equitable tolling.

### 3. Reliance on Misleading Conduct by Defendants

BONY argues that Alessi and Southern Highlands falsely assured BONY that HOA foreclosure sales would not extinguish deeds of trust. BONY also contends that SFR led BONY to believe that it preferred delaying quiet title litigation between April 19, 2013 and September 14, 2014, because SFR sought stays in many other cases involving HOA foreclosure sales. The defendants argue that SFR has always acted as if the deed of trust had been extinguished and so has not misled BONY.[4] Additionally, they assert that SFR did not delay the state court litigation involving this property, as SFR timely appealed the trial court's order and dismissed the action after the *SFR* decision because that ruling confirmed SFR's position in the state court litigation that the deed of trust was extinguished.

As discussed previously, the evidence BONY relies on does not show Alessi assured lenders that HOA foreclosure sales would not extinguish deeds of trusts. Even if it had, and even if the CC&Rs provided similar assurances, the NRED decision in December 2012 put BONY on notice that its deed of trust was in jeopardy. BONY also knew that SFR took the position with

---

[4] Because BONY has not plausibly alleged a basis for equitable tolling even when considering all facts as to all defendants, I need not address SFR and Southern Highlands' argument that only each defendant's own acts may be considered when determining whether to apply equitable tolling as to that defendant.

10

respect to this property that the deed of trust was extinguished and SFR did not stay the state court litigation related to this property. Instead, SFR pursued an appeal to the Supreme Court of Nevada where its interpretation of the law prevailed. Whatever SFR may have been doing in other cases, BONY's own allegations show SFR was not content to stay the litigation related to this property. BONY thus has not plausibly alleged that Alessi's, Southern Highlands', or SFR's actions or statements lulled BONY into not asserting its declaratory relief claim in a timely manner.

Because BONY has not plausibly alleged that the interests of justice favor equitable tolling, I need not address whether the defendants would be prejudiced. *State Dep't of Taxation*, 265 P.3d at 671 (stating that equitable tolling "is appropriate only when the danger of prejudice to the defendant is absent and the interests of justice so require" (quotation omitted)); *see also Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures."). I therefore grant SFR's and Southern Highlands' motions to dismiss the declaratory relief claim as untimely.

### B. Wrongful Foreclosure

The second amended complaint asserts a wrongful foreclosure claim against Alessi. ECF No. 63 at 16-17. Because this claim is brought only against Alessi, SFR and Southern Highlands lack standing to challenge it. I therefore deny this portion of their motions.

However, the second amended complaint does not name Alessi in the caption nor does it identify Alessi as a party in the section of the complaint where it discusses the parties to the action. *Id.* at 1-3. BONY asserts in its opposition to Southern Highlands' motion that "Alessi has

11

waived any right to argue that the claim against it is time-barred pursuant to the statute of limitations by its failure to appear and defend this action." ECF No. 79 at 7. However, this statement is wrong because no summons was ever issued for Alessi and nothing in the record shows Alessi has ever been served with a summons and any version of the complaint.

"If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The time to serve Alessi has long since passed. I therefore order BONY to show cause why the wrongful foreclosure claim should not be dismissed for failure to timely serve Alessi and failure to prosecute its claim against Alessi.

**C. Breach of the CC&Rs**

BONY's first amended complaint asserted a claim for equitable indemnification. ECF No. 17 at 10. Southern Highlands moved to dismiss this claim on the basis that it was untimely. ECF No. 24 at 11-13. I denied the motion, concluding the claim was timely. ECF No. 61 at 10-11. However, I advised BONY that equitable indemnification "does not appear to apply at all to this situation," so if BONY decided to amend, "it should consider whether equitable indemnification is a proper claim in this context." *Id.* at 11. In the conclusion of my order, I granted BONY leave to "file an amended complaint to allege facts supporting equitable tolling . . . ." *Id.* at 17.

My prior order did not grant BONY leave to add new theories of recovery or new facts to support new theories. Rather, I suggested to BONY that its equitable indemnification claim was meritless and thus should not be included in a second amended complaint. My order granted BONY leave to amend only to add facts supporting equitable tolling.

12

To the extent BONY's opposition could be construed as a motion to amend to add a claim for breach of the CC&Rs, I deny it. Where, as here,[5] a party seeks to amend after expiration of the deadline for amending the pleadings, the moving party first must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16. *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16(b)'s "good cause" standard centers on the moving party's diligence. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson*, 975 F.2d at 609. The good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action. *See United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007); *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) ("Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.") (quotation omitted).

Although Rule 16 does not require a showing of prejudice, I may consider whether prejudice would result to the party opposing amendment. *Coleman*, 232 F.3d at 1295. Prejudice has been found where the plaintiff moved to amend late in the proceedings, thereby requiring the defendant to go "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (quotation omitted). Whether to modify the scheduling order's amendment deadline lies within my discretion. *Dang*, 488 F.3d at 1142-43.

---

[5] The deadline to amend pleadings was March 15, 2018. ECF No. 28 at 1.

13

BONY has not shown good cause for amending the scheduling order because BONY has been aware of the newly alleged theory and related facts since the inception of the action. BONY knew before it filed the original complaint that: the CC&Rs existed, Alessi did not respond to the letter requesting the superpriority amount, Alessi and Southern Highlands then conducted the HOA sale, SFR was contending that it was a superpriority sale that extinguished the deed of trust, and Alessi and Southern Highlands did not distribute any of the sale proceeds to BONY. *See* ECF No. 63 at 15. Consequently, BONY could and should have asserted its claim for breach of the CC&Rs in its original complaint or the first amended complaint. BONY therefore has not shown it was diligent.

Additionally, Southern Highlands would be prejudiced by the late amendment, which would require continued litigation on new facts and a new theory of recovery. It may also require additional discovery on issues such as whether Alessi received the Bank of America letter and whether BONY mitigated its damages. *See* ECF No. 65 at 22-30. I therefore grant Southern Highlands' motion and deny modification of the scheduling order's deadline to amend the pleadings to add a new claim.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant SFR Investments Pool 1, LLC's motion to dismiss **(ECF No. 68)** and defendant Southern Highlands Community Association's motion for summary judgment **(ECF No. 65) are GRANTED in part**. Plaintiff Bank of New York Mellon's claims for declaratory relief and breach of the CC&Rs are dismissed.

/ / / /

/ / / /

/ / / /

14

IT IS FURTHER ORDERED that on or before May 31, 2019, plaintiff Bank of New York shall show cause in writing why defendant Alessi & Koenig, LLC should not be dismissed from this action for failure to timely serve and failure to prosecute.

DATED this 10th day of May, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE